UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-24333-CIV-MARTINEZ

ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY,

      Plaintiff,

v.

THE GREENS CONDOMINIUM ASSOCIATION,
INC., VANESSA CENDOYA, and EXCEL
MANAGEMENT ASSOCIATES, INC.,

      Defendants.

_____/

### REPORT AND RECOMMENDATION ON PLAINTIFF'S
### MOTION FOR FINAL DEFAULT JUDGMENT

This matter is before the Court on Plaintiff Endurance American Specialty Insurance Company's ("Endurance") Motion for Final Default Judgment against Defendants The Greens Condominium Association, Inc. ("the Association"), Vanessa Cendoya, and Excel Management Associates, Inc. ("Excel") (collectively, "Defendants"). ECF No. 29.[1] The Defendants did not file a response to the Complaint or to the Motion for Final Default Judgment, and the deadlines to do so have passed. After careful consideration of the Plaintiff's filings, the record, and the relevant authority, and for the reasons discussed below, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's Motion for Final Default Judgment be **GRANTED**.

### I.   PROCEDURAL POSTURE

On November 13, 2023, Plaintiff initiated the instant action against Defendants solely seeking declaratory relief regarding insurance coverage and its duty to defend and indemnify the

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred the motion to the undersigned.  ECF No. 30.

Association and Excel for claims made by Cendoya relating to property damage that she allegedly suffered.  ECF No. 1.  Defendants were served with a Summons and Complaint, *see* ECF Nos. 20-22, and all three Defendants failed to respond.  The Court *sua sponte* entered an order directing the clerk to enter default, *see* ECF No. 23, which the Clerk of Court subsequently entered on January 24, 2024, *see* ECF No. 24.  After the Clerk's entry of default, the Court entered an Order of Default Final Judgment Procedure, giving the Defendants until February 7, 2024, to respond to the Complaint and file a motion to set aside the Clerk's default, and directing the Plaintiff to file a Motion for Default Judgment by February 14, 2024.  ECF No. 25.  Defendants did not respond to the Complaint and did not file a motion to set aside the Clerk's default.  Plaintiff, however, filed its motion for final default judgment against all Defendants.  ECF No. 29.

As of the date of this report, Defendants have not responded to the Complaint or to the Motion for Final Default Judgment, no attorney has made any appearance on any Defendant's behalf, and Defendants have made no filings in the case.

## II.  FACTUAL BACKGROUND[2]

The Underlying Litigation

On September 29, 2021, Ms. Cendoya commenced a Florida state court action ("the Underlying Litigation") by filing a state court complaint against the Association for negligent failure to maintain the common elements of the Association, where Cendoya owned a condominium unit ("the Unit").  ECF No. 1 at ¶¶ 14-15, 18; ECF No. 1-3.  Specifically, Ms.

---

[2] The following facts are admitted as a result of the Defendants' default.  *See, e.g.*, *Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024). The factual background is derived from Endurance's Complaint, ECF No. 1, and its attached exhibits, including the operative Amended Complaint in the Underlying Litigation ("Amended State Complaint"), ECF No. 1-2; the original Complaint in the Underlying Litigation, ECF No. 1-3; and the Insurance Policy issued by Plaintiff Endurance, ECF No. 1-5.

Cendoya brought claims for property damage resulting from ongoing water leaks into the Unit.  In July 2023, Ms. Cendoya filed a Motion for Leave to Amend Complaint to Add Party and Claims for Punitive Damages in the Underlying Litigation, seeking to add Excel, the Association's property manager.  ECF No. 1 at ¶ 16.  In September 2023, Ms. Cendoya was granted leave to add Excel as a party, and the Amended State Complaint was deemed filed, but the state court reserved ruling on Ms. Cendoya's request for Punitive Damages.  ECF No. 1 at ¶ 17; ECF No. 1-2.

The Amended State Complaint in the Underlying Litigation alleges that, as a result of improper budgetary practices and other failures by the Association and Excel, necessary repairs and maintenance of the Association's common elements had not been undertaken, which resulted in the deterioration of the Association's roof over the Unit and ongoing water leaks into the Unit. ECF No. 1 at ¶ 19; ECF No. 1-2.  The Amended State Complaint alleges that between June 2020 and February 2023, neither the Association nor Excel attempted to stop the water leaks.  ECF No. 1 at ¶ 21; ECF No. 1-2.  In both June and September of 2020—before Ms. Cendoya commenced the Underlying Litigation—counsel for Ms. Cendoya demanded that the Association repair the water leaks into the Unit.  ECF No. 1 at ¶ 25; ECF No. 1-3 Exs. F & G.  The June 2020 pre-suit correspondence claimed that the water leaks had been happening for "several weeks," and by September 2020, the pre-suit correspondence indicated that the water leaks had been happening for months.  ECF No. 1 at ¶¶ 26-27; ECF No. 1-3 Exs. F & G.  In an evidentiary hearing in the Underlying Litigation, Ms. Cendoya consistently testified that the water leaks began in the summer of 2020.  ECF No. 1 at ¶ 31; ECF No. 1-4 at 26, 28, 64.

As a result of water leaking into the Unit, the Unit has allegedly deteriorated, suffered interior water damage, including the presence of extensive mold and mildew in the Unit and behind the Unit's walls, and become uninhabitable.  ECF No. 1 at ¶¶ 20-21, 32-33; ECF No. 1-2.  Ms.

Cendoya further alleges that, as a result, the former tenants moved out of the Unit, and Ms. Cendoya lost money in rent.  ECF No. 1 at ¶¶ 21-22, 32-33; ECF No. 1-2.  Ms. Cendoya asserts causes of action against the Association for (1) breach of the Condominium Documents and the Condominium Act; (2) breach of fiduciary duty; (3) negligence; and (4) injunctive relief.  ECF No. 1 at ¶ 28; ECF No. 1-2.  Ms. Cendoya asserts causes of action against Excel for (1) breach of fiduciary duty; (2) negligence, and (3) negligent hiring and retention and vicarious liability.  ECF No. 1 at ¶ 29; ECF No. 1-2.  Ms. Cendoya also seeks to recover her attorneys' fees and costs.  ECF No. 1 at ¶ 23; ECF No. 1-2.

The Insurance Policy

Plaintiff Endurance issued to the Association a commercial general liability policy bearing policy number CBC20000314600, effective from February 26, 2015, through February 26, 2016 ("the Policy").  ECF No. 1 at ¶ 34; ECF No. 1-5.

The Policy states in "Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability":

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

ECF No. 1-5 at 15.  This section limits coverage to "bodily injury" and "property damage" occurring within the coverage territory and **during the policy period of February 26, 2015, to February 26, 2016**.  *Id.*; *see id.* at 11 (policy period).  The subsection "Exclusions" immediately follows and excludes coverage for property damage to property owned, rented, or occupied by the

Association.  *Id.* at 18.  Under the Policy, "property damage" includes both "[p]hysical injury to tangible property" and "all resulting loss of use of that property."  *Id.* at 29.

The Policy also includes several endorsements that modify the Policy.  The endorsement titled "Punitive, Treble or Exemplary Damages Exclusion" modifies the Policy so that it "shall not apply to a claim of, or indemnification for, punitive, treble or exemplary damages."  *Id.* at 34.  The endorsement titled "Mold, Fungus, Bacteria, Virus and Organic Pathogen Exclusion" modifies the policy so that it "shall not apply to any 'bodily injury', 'property damage', 'personal and advertising injury', loss, cost or expense arising out of or in any way related to any form of 'organic pathogens,'" which the Policy defines as "any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus."  *Id.* at 42.  Finally, the "Supplementary Payments – Coverages A and B" provision states that Endurance will pay "[a]ll court costs taxed against the insured in the 'suit,' [which] do not include attorneys' fees or attorneys' expenses taxed against the insured."  *Id.* at 22.

Endurance has agreed to defend the Association and Excel in the Underlying Litigation pursuant to a complete reservation of rights.  ECF No. 1 at ¶ 41.  However, unsure of its duty to provide the Association and Excel with a defense and indemnity in connection with the claims made by Ms. Cendoya in the Underlying Litigation, Endurance commenced the instant declaratory action to address its rights and duties under the Policy.  *Id.* at ¶ 42.  After Defendants failed to respond to the Complaint and the Clerk entered a default, Endurance filed its motion for a final default judgment in this action.

### III. APPLICABLE LEGAL STANDARDS

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th

Cir. 2002).  The effect of a clerk's default is that all of the plaintiff's well-pled allegations are deemed admitted.  *See Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)); *see also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (defaulted defendant deemed to admit well-pled allegations, but "not held to admit facts that are not well-pleaded or to admit conclusions of law").

Only the well-pled allegations are admitted because "entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) ("The Complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, which is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Certain Underwriters at Lloyd's London Subscribing to Policy BRT3A000415-02 v. A.M.A. Consulting & Constr. Servs.*, No. 21-cv-20979, 2022 WL 542893, at *5 (S.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 539183 (S.D. Fla. Feb. 22, 2022). Therefore, before entering a default judgment, a court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007); *see also, e.g.*, *Luxottica Group S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, No. 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017) ("Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered.").

In an action based on diversity, the substantive law of the forum state applies.  *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017).  Thus, in order to determine whether Endurance owes the Association and Excel a duty to defend or

indemnify, the undersigned looks to Florida law. *Id.* Moreover, "[u]nder Florida law, a court may issue a declaratory judgment as to an insurer's duty to defend and duty to indemnify." *Certain Underwriters*, 2022 WL 542893, at *15 (quoting *Am. Home Assurance Co. v. Vreeland*, No. 05-cv-2250, 2006 WL 1037111, at *1 (M.D. Fla. Apr. 19, 2006)); *see also AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC*, 383 F. Supp. 3d 1334, 1337 (M.D. Fla. 2019) ("A declaratory judgment is an appropriate method for the court to determine coverage issues, including the duty to defend and indemnify.") (citing *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9 (Fla. 2004)).

The duty to defend is separate and distinct from the duty to indemnify, and "'courts must look to the underlying complaint to determine the duty to defend, not the true facts of the cause of action against the insured[.]'" *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 771 (11th Cir. 2019) (quoting *Trailer Bridge, Inc. v. Ill. Nat. Ins. Co.*, 657 F.3d 1135, 1144 (11th Cir. 2011) (per curiam)); *see also, e.g., Amguard*, 2024 WL 996444, at *3. "The duty to defend is broader than the duty to indemnify, such that a finding that an insurer does not have a duty to defend compels a finding that the insurer does not have a duty to indemnify." *Amguard*, 2024 WL 996444, at *3. An insurer's duty to defend arises from the insurance contract and policy. *Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1355 (S.D. Fla. 2017) (citing *Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So. 2d 142, 144 (Fla. 1997)). In Florida, insurance contracts are construed in accordance with their plain language and should be read as a whole. *Amguard*, 2024 WL 996444, at *2 (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)); *see also Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

**IV. ANALYSIS**

As discussed above, courts will construe an insurance contract according to its plain meaning. *See, e.g.*, *Amerisure Mt. Ins. Co. v. Auchter So.*, 673 F.3d 1294, 1301 (11th Cir. 2012). The Insurance Policy issued by Endurance, through the provisions discussed above, unambiguously limits and excludes coverage under the Policy for (1) property damage occurring outside the policy period of February 26, 2015, through February 26, 2016; (2) property damage to property owned by the Association; (3) property damage caused by organic pathogens, including mold; and (4) punitive damages and attorneys' fees. ECF No. 1-5.

As a result of the Defendants' default, the Complaint in this case has established the facts that: (1) Ms. Cendoya was the owner of the Unit within the Association; (2) the Unit suffered property damage as a result of water leaks that began during the summer of 2020; (3) the Unit suffered mold as a result of that water damage; (4) Ms. Cendoya commenced the Underlying Litigation against the Association and Excel seeking redress for the property damage that she sustained as a result of those leaks; and (5) Ms. Cendoya was seeking punitive damages and attorneys' fees from the Association and Excel in her lawsuit. Given the facts and the plain terms of the Insurance Policy, it is clear that Ms. Cendoya's claims against the Association and Excel in the Underlying Litigation do not come within the coverage of the Insurance Policy.

Here, the Policy unambiguously excludes coverage for property damage that did not occur within the policy period that started on February 26, 2015, and ended on February 26, 2016. ECF No. 1-5 at 11, 15. The property damage that is the subject of this case and the Underlying Litigation, however, is property damage that did not begin until, at the earliest, the Summer of 2020. *See* ECF No. 1 at ¶¶ 26-27, 31; ECF No. 1-3 Exs. F & G; ECF No. 1-4 at 26, 28, 64. Endurance thus has no duty under the Policy to defend or indemnify the Association or Excel in

connection with Ms. Cendoya's lawsuit for post-2016 property damage.  The Policy, moreover, also unambiguously excludes coverage for: property damage, loss, cost or expense in any way related to organic pathogens, including mold, ECF No. 1-5 at 42; damage to the common property owned by the Association, *id.* at 18; attorneys' fees, *id.* at 22;[3] and punitive damages, *id.* at 34. Because there is no coverage under the Policy for the claims seeking damages in the Underlying Litigation, *see* ECF No. 1-2, Endurance has no duty to defend the Association or Excel in the Underlying Litigation and is entitled to entry of a default declaratory judgment.  *See* ECF No. 1-5 at 15 ("[W]e will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.").  A finding that Endurance does not have a duty to defend also compels the finding that Endurance likewise does not have a duty to indemnify the Association or Excel.  *Amguard*, 2024 WL 996444, at *7 ("[A] finding that an insurer does not have a duty to defend compels a finding that the insurer does not have a duty to indemnify.").

Given these circumstances, Endurance has established that it is entitled to a default declaratory judgment declaring that it is not required by the Policy to defend or indemnify either the Association or Excel in connection with the Underlying Litigation.

## V.    CONCLUSION

Based on the foregoing, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Final Default Judgment be **GRANTED**, and that the default judgment entered by the Court declare that Endurance has no duty to defend or obligation to indemnify the Association or Excel against the claims asserted by Ms. Cendoya in the Underlying Litigation, including Ms. Cendoya's

---

[3] The Policy, however, does not exclude coverage for costs where the Policy otherwise provides coverage.  ECF No. 1-5 at 22.

claims for property damage, claims arising from the existence of mold and mildew, claims involving property damage to the common property of the Association, claims seeking attorneys' fees, and claims seeking punitive damages.

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation.  Accordingly, within three (3) days from the date of this Report and Recommendation, that is, **by September 27, 2024**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Judge.  Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 146-47 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 24th day of September 2024.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:    Hon. Jose E. Martinez
        Counsel of Record